IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC STUPAK,

                Plaintiff,

v.                                                                OPINION and ORDER

MONT DU LAC SNOWSPORTS LLC                                        24-cv-291-jdp
and NOVA CASUALTY COMPANY,

                Defendants.

---

This case arises from the after-hours use of a tubing slide at a ski resort owned by defendant Mont du Lac Snowsports, LLC. In the summer of 2022, plaintiff Eric Stupak attempted to ride a tube down one of the slides. But because the side bumpers were not inflated, Stupak careened off the slide, crashed into a tree, and suffered serious injuries. Stupak alleges that Mont du Lac was negligent in maintaining the premises and in failing to prevent him from using the slide, and he seeks damages from Mont du Lac and its insurer, Nova Casualty Company. Defendants move for summary judgment.

The main issue is whether Stupak was a trespasser when he used the slide. If he was, then Mont du Lac owed the trespassing Stupak only the limited duty to refrain from willful, wanton, or reckless conduct. Stupak contends that he was not a trespasser because a Mont du Lac employee working at the time said, "I'm not going to say anything," when asked if Stupak and his friends could use the slide. What the employee actually said is disputed. But even accepting Stupak's version, as we must on defendant's motion for summary judgment, no reasonable person would accept such a statement as consent to use the slide, especially in the context of the many cues that the slide was not open and operating. There's no evidence to

support Stupak's contention that Mont du Lac was willful, wanton, or reckless. The court will grant the motion for summary judgment and close the case.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

On Sunday, June 19, 2022, plaintiff Eric Stupak went to the Mont du Lac resort to play disc golf with two friends, Laramie Carlson and Jonathan Hamann. Stupak was 35 years old at the time and had regularly played disc golf at the resort the previous 10 summers. Stupak and his friends completed their round of disc golf and a few beers in the early evening. The men, all of whom held season passes to the full resort, discussed their interest in the resort's tubing slides. None of them had ever ridden the slides, even though use of the slides was included in the privileges granted by the season pass. (The slides were not open that day. They were open, weather permitting, only on Fridays and Saturdays.) The three decided to ask permission to use the slides.

Hamann went to the base lodge. When he entered, the sole employee, Devnon Shultz, was engaged with a group of resort guests at the counter. According to Hamann, from a distance of ten to 15 feet away, he said "Hey me and my buddies have season passes, and we would like to use the slide, is that okay?" The employee's verbatim response, according to Hamann, was "I'm not going to say anything." Dkt. 45 (Hamann Dep. 31:13–21). Shultz's version is that Hamann "asked if the tubing hill was open" to which Schultz replied, "No." Dkt. 40 (Schultz Dep. 84:14–19). Hamann then asked, "Could I use it anyways?," to which Schultz again

replied, "No." *Id.* (84:20–23).[1] For purposes of defendants' motion for summary judgment, the court must accept Hamann's version of his conversation with Schultz.

Whatever actually happened inside the lodge, there is no dispute that Hamann conveyed to Stupak and Carlson that it was OK for them to use the slides. The three men then went to the tubing hill where four tubing slides were located. There were loose tubes at both the top and bottom of the hill, and a few more partway up the hill. The conveyor that carried people and tubes up to the top of the hill was not running. There were no resort employees or anyone else at the conveyor or the slides when the men walked up the hill. No one else was using the slides.

Hamann went to one of the slides, looked down it, "just kind of didn't have a good feeling about it," and decided to try a different one that was a straight descent, called "Plunger." A photograph shows the Plunger slide from the top starting platform. Dkt. 38-15 (attached as an appendix to this opinion). The blue strips running down each side of the slide are inflatable bumpers to keep the rider's tube on the slide. Because the slide was closed when Stupak and his friends went to use it, the bumpers were not inflated. A "Ride Closed" sign was attached to a chain that was coiled up next to the steps to the platform, but the chain was not up to block entrance to the platform.

Hamann went down the slide first without incident. Once Hamann said he was clear, Stupak started. But part way down, Stupak went off the slide and hit a tree. Hamann provided

---

[1] In Stupak's account, Hamann reported to Stupak and Carlson that Schultz said, "If I didn't see it, it didn't happen." Dkt. 43 (Stupak Dep. 33:1–4). Hamann and Carlson didn't remember exactly what Hamann said. The court will not consider Stupak's testimony about what Schutz said because it is based on inadmissible hearsay from Hamann.

first aid while Carlson went to get help. Stupak suffered serious injuries, including a collapsed lung, broken ribs, a broken vertebra, and a broken hip.

Stupak is a citizen of Minnesota. Mont du Lac is a Wisconsin limited liability company. Its only two members are Larry Pulkrabek and Donna Pulkrabek who are, respectively, citizens of Iowa and Wisconsin. Dkt. 61. Nova Casualty Company is an insurer domiciled and incorporated in New York with its principal place of business is Massachusetts. Stupak seeks more than $500,000.00 in damages. Because the parties have diverse citizenship and the amount in controversy is greater than $75,000, the court may exercise jurisdiction under 28 U.S.C. § 1332.

ANALYSIS

Stupak brings claims under Wisconsin's safe-place statute and the common law of negligence, alleging that Mont du Lac w as negligent in failing to safely construct, maintain, and supervise the slide and tubes. Defendants move for summary judgment, contending that Stupak was a trespasser, so that Mont du Lac had no duty except to refrain from willfully, wantonly, or recklessly injuring him.[2]

Summary judgment is appropriate only if there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party, here Stupak. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is genuinely disputed only if

---

[2] Defendants also move for summary judgment on other grounds. They contend that Mont du Lac is not liable under the Alpine Sports immunity statute, Wis. Stat. § 167.33 and that Mont du Lac's negligence is not a proximate cause of Stupak's injuries. The court need not decide these issues.

both sides have evidence that would support a reasonable jury finding in their favor. In other words, to forestall summary judgment, Stupak must adduce evidence that, with the record taken as a whole, could support a reasonable jury verdict in his favor. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

## A. Whether Stupak was a trespasser

To establish either of his claims, Stupak would have to show that Mont du Lac owed him a duty, which it breached, causing him injury. Stupak's status as a putative trespasser affects the first element, duty. Under Wisconsin law, trespassers are not owed the general duty of ordinary care, but only the more limited duty to refrain from willful, wanton, or reckless conduct. *Monsivais v. Winzenried*, 179 Wis. 2d 758, 763–64, 508 N.W.2d 620, 623 (Ct. App. 1993) (citing Wis. J. I—Civil 8025 and *Nalepinski v. Durner*, 259 Wis. 583, 586, 49 N.W.2d 601, 602 (1951)).

"A trespasser is one who enters another's premises without an express or implied invitation from the other person, and solely for his own pleasure, advantage, or purpose." *Reddington v. Beefeaters Tables, Inc.*, 72 Wis. 2d 119, 124, 240 N.W.2d 363, 366 (1976). A person may have express or implied permission to be in one part of a premise that is open to the public, but he becomes a trespasser when he moves into part of the premises closed to the public. *Monsivais*, 179 Wis. 2d at 771–72; *see also Grossenbach v. Devonshire Realty Co.*, 218 Wis. 633, 637–38, 261 N.W. 742 (1935). Stupak and his friends entered the disc golf course and the base lodge with consent, so they were not trespassers there. The question is whether Stupak and his friends had express or implied permission to enter the area of the resort where the slides were. There's no genuine dispute that the slide hill was closed when Stupak and his friends

were there. But Stupak contends that he had implied consent to enter the slide hill area and use the slides based on the single comment by Mont du Lac employee Devon Schultz.

Whether there is implied consent is an objective inquiry, so the subjective belief of Stupak and his friends are irrelevant. The question is whether a reasonable person would infer from the totality of the existing circumstances that the owner had implicitly consented to the entry. Factors to consider, in addition to the words and actions of the owner, include the owner's acquiescence in previous use of the premises by others, the customary use of the premises by others, the apparent holding out of the premises for use by others, and the general arrangement and design of the premises. *Zillmer v. Orpheum Theatre Project, LLC*, 2006 WI App 78, ¶ 13, 292 Wis. 2d 484, 713 N.W.2d 191 (quoting Wis. JI—Civil 8015).

The court starts with the words of the owner, through its employee, Schultz. In the version of the interaction between Hamann and Schultz that the court must accept, Schultz said "I'm not going to say anything" in response to Hamann's question whether they could use the slides. The problem for Stupak is that the clear implication of this statement is that Hamann and his friends did *not* have consent to use the slides, but that Schultz himself wouldn't tattle about the unauthorized use. Schultz's single comment is the cornerstone of Stupak's argument for implied consent, but it's a weak one.

Stupak's argument collapses in the context of the broader circumstances. Stupak and his friends apparently recognized that they needed permission to use the slides, which is why they inquired in the first place. Their request for permission also undermines any argument that the slide area was held out as open for use. And there's no evidence that it was so held out. This wasn't a natural recreation area like a hiking trail. It was a constructed amusement of the sort that would typically be attended by guides, but none were present. The dangers of

unattended use were obvious: Hamann himself recognized that something was odd when he faced that first slide and decided it wasn't a good idea to use it. And there were multiple signs that the slide was closed: the conveyor to bring tubes and participants to the top was turned off, the bumpers were deflated, and no one else was using the slides on an early Sunday evening in June. Stupak has adduced no evidence that Mont du Lac had ever allowed anyone to use the slides when they were not formally open and attended by an employee. No reasonable person in Hamann's shoes would have thought they had permission to use the slides. (He's the one that matters because only he heard what Schultz said.)

Mont du Lac is not necessarily faultless here. The Plunger slide that Hamann and Stupak used did not have the "Ride Closed" sign up. And the tubes in the slide area were lying about, rather than locked away. But whether Mont du Lac was at fault is not the question: the question is whether a reasonable person would have thought they had permission to use the slides. The absence of a sign specifically saying that an area is off-limits does not establish that someone has implied consent to enter. *See Zillmer v. Orpheum Theatre Project, LLC*, 2006 WI App 78, ¶ 17, 292 Wis. 2d 484, 713 N.W.2d 191 (plaintiff was a trespasser to a backstage area even though the usual "do not enter" signs were down).

In the context of all the obvious cues that the slides were closed, no reasonable person would infer from Schultz's alleged promise to keep mum that they had implied permission to use the slides. Stupak used the slides at Mont du Lac as a trespasser.

## B. Whether Mont du Lac met its duty owed to Stupak as a trespasser

Even with respect to trespassers, Mont du Lac has a duty to refrain from willful, wanton, or reckless conduct. *Monsivais v. Winzenried*, 179 Wis. 2d at 764 (citing Wis. JI—Civil 8025). Under Wisconsin law, willful actions are "deliberate acts with intent to accomplish a result."

Wis. JI—Civil 8025. Conduct is wanton or reckless if it is "so unreasonable and dangerous that the actor knows or should know that it is highly probably harm to another will result." *Id.*

Stupak doesn't concede the point, but he's adduced no evidence that Mont du Lac engaged in any willful, wanton, or reckless conduct. The fundamental problem is that Mont du Lac didn't take any affirmative action with respect to Stupak and his friends. Mont du Lac simply left the slide area as it was, waiting for its next open session.

Stupak contends that Schultz's statement that Hamann and his friends could use the slide was somehow willful, wanton, or reckless. The argument is underdeveloped in a scant paragraph. Dkt. 49 at 12. As the court explained above, that's not what Schutz said and it's not a reasonable inference from what Schultz said. Stupak says that Schultz knew or should have known that using the slide without the bumpers inflated was dangerous. But that's just negligence, not willful, wanton, or reckless conduct. Stupak does not explain how Schultz's conduct was so unreasonable and dangerous that Schultz should have known that it was highly probable that someone would be injured as a result.

Stupak also makes a short argument that a "related doctrine of 'discovered trespasser' creates a duty of ordinary care" that could apply to this case. Dkt. 49, at 12–13. Under Wisconsin law, if a property owner is aware, or in the exercise of ordinary care should have become aware, of the presence of trespassers, the property owner may not affirmatively act in a way that is likely to harm the trespasser. Wis. JI—Civil 8025. Stupak's argument is that once Schultz knew that Hamann and his friends wanted to use the slides, Schutz had some affirmative duty make sure they didn't use the slides. But the only duty owed to a discovered trespasser is to take "no affirmative act or set any force in motion likely to cause injury or death

8

to trespassers." *Id*. Stupak has adduced no evidence that Schultz took any affirmative act likely to cause injury Stupak and his trespassing friends.

ORDER

IT IS ORDERED that the motion for summary judgment by defendants Mont du Lac Snowsports, LLC, and Nova Casualty Company, Dkt. 33, is GRANTED. The clerk of court is directed to enter judgment and close the case.

Entered June 10, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

APPENDIX

